The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stagman presiding. Thank you, Mr. Bailiff. This case is our number 4-2-3-0-7-3-8. Allied Design Consultants, Inc. versus Pekin Insurance Company. And I'll ask the counsel for the appellant, please state your name, sir. Steve Kenyon. Thank you. And counsel for the appellate, please state your name. Robert Chemers. Good morning. Mr. Kenyon, you may proceed on behalf of the appellant. Good morning, justices, counsel, and if it may please the court, I am Steve Kenyon appearing on behalf of the appellant, Allied Design Consultants, which is an architectural firm. There is one simple question before this court. Did the trial court erroneously relieve the appellee, Pekin Insurance Company, of his duty to defend, even though the allegations in the underlying lawsuits allege non-professional negligence that is potentially outside the professional services exclusion within a business owner's insurance policy? Specifically, the non-professional negligence is Allied Design's breach of the common law duty of ordinary care by failing to properly and adequately repair or otherwise remedy mechanical systems. Before this court is a de novo question of law, as it is interpreting Pekin Insurance Company. Under Illinois law, a liability insurer's duty to defend is broader than the duty to indemnify. When a trial court determines if an insurer has a duty to defend, it compares the allegations in the complaint with the coverage provisions in the insurance policy. If the allegations potentially fall within the coverage provisions, the insurer has a duty to defend, unless the insurer can demonstrate that it is clear and free from doubt that an exclusion applies to all of the allegations against the insurer. Counsel, let me ask you a question. You're familiar, I'm sure, with this case, the State Street Bank and Trust Company of Quincy versus INA Insurance? Yes. Okay. Now, in that case, this court addressed a similar policy which excluded liability coverage for personal injury or property damage due to the insurance rendering of a failure, rendering of or failure to render any professional service. But in that case, if I understand it correctly, and that's what I want you to address, this court called the insurance policy at issue, quote, an office insurance policy, unquote, which was intended to cover losses arising out of building ownership or occupancy. And that's why we held that the insurance had no need to cover in that case. Why isn't the insurance policy in this case similarly an office building policy for your clients? Thank you for that question, Justice Steinman. In this case, the particular insurance policy in question is a business owner's insurance policies as opposed to, as you said a moment ago, the office occupancy policy in the State Street case. If I may provide the quick facts in that case, which are that there, State Street Bank was a bank and had a customer in which the relationship deteriorated and State Street seized the assets and sold the assets of that customer. Here, business owner's policy is different in the respect that it provides coverage for common negligence and common duties of care that the policy- So let me stop you there. Following up on what Justice Steinman is pointing out here, I guess my question would be, isn't there a professional negligence policy in play as well? I know it's not mentioned in this particular case, but wouldn't that cover what happened here if there is indeed negligence versus using the policy that you have described as a business owner's policy? Justice Turner, you're correct. There is a professional services policy in place for my client, Ally Design Consultants. Okay, well, isn't that the essence then of the case Justice Steinman cited that this court issued many years ago? State versus Quincy, State Street Bank versus Quincy? Yes, it is the essence. But however, if I understand the question correctly, I believe you're asking, so why did my client, Ally Design Consultants, not pursue the professional services policy as opposed to the business owner's policy? Am I correct, Justice? I didn't actually ask that. I wanted to, but wasn't sure that I should quite go there. Now that you've asked it for yourself to answer, I would like hearing that answer. I guess I'll use the old adage, answer the question that you want to answer, correct? Yeah, that's right. So that distinction, Justice Turner, relies on the targeted tender rule we have here in Illinois. What? The targeted tender rule, in other words. Oh, okay. And you're familiar with that rule. Yes. One of the key to factual differences between the professional liability policy that my client purchased is that it has an eroding defense costs. In other words, as defense costs incur, the overall limit of the policy erodes. So in that instance, it was a $1 million policy. And as defense costs are paid, that $1 million becomes smaller with each dollar of defense costs paid. In contrast, the business owner's policy doesn't have that provision. It is a non-wasting policy, wherein once defense costs are paid, it does not erode that $1 million per occurrence limit. And thus, there is more money available at the end of the day if the duty to indemnify arises. Okay, thank you. Please go ahead with your- I have a question as a follow-up. I'm not sure from the record, does Ally Design Consultancy have an office as opposed to just people working from home and doing virtual work? Justice Steigman, yes. It did have an office on MacArthur Boulevard here in Springfield, Illinois. Okay, well, the reason I ask that is it sounds to me, going back to the question about an office building policy, the policy we're talking about here is designed to provide insurance for injuries or accidents or problems in the building. Someone comes in and trips on the stairs or is claiming that your client was negligent in some fashion with regard to the office building. This is a policy which would cover that, would it not? There are similarities in the two policies, Justice Steigman. I cannot provide you the specifics of what the building owner's policy in the State Street case stated. I just don't know that fact. But it seems to me that what we're talking about here is a insurance policy covering the Ally Design Consultants building on MacArthur Drive in Springfield. Isn't that what we're talking about? Respectfully, not in the entirety, Justice Steigman. What we're talking about- You think Pekin Insurance wrote a policy to cover negligent acts on the grounds of its building that was broad enough to cover claims that they were negligent in their professional services? Justice Steigman, Pekin wrote an insurance policy that covered non-professional services negligence, right? That non-professional services negligence would not be simply relegated to the four corners of the real estate of that office on MacArthur Boulevard in Springfield, Illinois. That what we're talking about here is allegations made in the complaint of non-professional conduct to which the simple ordinary duty of care applies. It seems to me that what we're talking about is that your client failed in its business task, its professional task when it went out and was concerned with this particular school, they should have done things better as they designed or supervised it. This has nothing to do with their building or negligence on their building, does it? No, there is no allegation in the complaint about any specific activity occurring on the building or the real estate where the office is located. You're correct, Justice Steigman. Well, I guess I'm still wrestling with the notion that this is designed to provide insurance coverage for their building, how it's broad enough in your judgment that it's gonna cover claim negligent performance of professional services. Well, my argument, Justice Steigman, is that it doesn't, my argument is not professional services. There is an exclusion in the policy for professional services. My argument is that the complaint alleges non-professional negligence. Still having trouble understanding how this works. Well, if I may continue, Justice. Go ahead, yes. Right, I mean, this is a business owner policy. It provides a number of coverages as a package. That's why they call it business owner policy. One of those being negligence. And of course, there are exclusions to certain forms of negligence, such as professional negligence. Here, in this case, the allegation is that non-professional negligence occurred. That's my argument. Consequently, the business owner's policy should cover that non-professional negligence. And it doesn't necessarily emanate from the conducting this onsite inspection of a school. Well, if you were picking insurance and you wanted to write a policy that would cover the building and negligence in the building, how would you have written it differently to make sure it couldn't be subject to the kind of claim you're now making? Well, that's the essence of insurance because Pekin and every other insurance company in Illinois writes the policy. Well, how would you have written it? Well, I may have written it in terms of being very restrictive that this particular policy only covers what occurs on the real estate of Allied Design on MacArthur Boulevard in Springfield, Illinois. But again, that's the insurance policies and excuse me, insurance companies in Illinois have the right to, excuse me, maybe I had a right, but certainly right policies as they can within the confines of the Illinois Insurance Code. Go ahead. All right, thank you. In this case, Pekin Insurance Company does not dispute that the allegations fall within the insurance policy. Thus it was Pekin's burden to demonstrate that all of the allegations in the underlying lawsuits fall clearly and undoubtedly within the scope of the professional services exclusion unless Pekin could carry that heavy burden that it had a duty to defend Allied Design. Professional duties fall within the professional services exclusion. This is so because of the appellate court, specifically this district in the aforementioned case, State Street Bank and Trust decided that the professional service involves specialized knowledge, labor or skill, and it's predominantly mental or intellectual as opposed to physical or manual in nature. The underlying complaint alleges Allied Design owed the plaintiff certain duties in the course of providing services. One service was conducting a statutorily mandated distinct inspection known as the Health Life Safety Survey of a public school. Because conducting a Health Life Safety Survey of a public school is a mental or intellectual exercise which requires special skills and fulfills professional regulatory and statutory duties, the professional services exclusion may apply to these allegations. But that does not end the inquiry because not all negligence arises from exercising professional skills. The fifth district of this appellate court recognized this fact in the Bonney-Owen Realty Decision by noting when the complaint alleges simple negligence, which does not involve any specialized knowledge, labor or skill, nor involving conduct that is mental or intellectual in nature, the professional services exclusion does not apply. That is exactly the issue before this court. The plaintiff in her complaint alleges that Allied Design breached as common law duty of ordinary care. Ordinary care has been defined to be that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. The plaintiff does not say ordinarily prudent architect, ordinarily prudent engineer, nor any other ordinarily prudent professional service provider. The plaintiff simply alleged Allied Design failed to act as an ordinary prudent person. The plaintiff further alleges that Allied Design negligently and carelessly failed to properly and adequately repair or otherwise remedy the unsafe and dangerous conditions of the mechanical systems within the school. In the record at E-8, which is the general allegations on page five, paragraph 20 of the complaint, the plaintiff alleges that Allied Design and another defendant designed and or constructed certain mechanical systems, including domestic hot water heaters, hot water boilers, and an air handling unit. This alleged fact does not mention performing a professional service, nor is design construction and repair of mechanical systems an essential or integral part of conducting a statutory health life safety survey of a public school. Thus the trial court committed error by ignoring these allegations of non-professional negligence or treating them as arising from Allied Design's professional inspection services. Repair is a verb. To repair hot water heaters, hot water boilers, and an air handling unit means to physically act, which is not mental or intellectual in nature. A person does not need to hire an architect to repair a hot water heater, hot water boiler, or air handling unit. How is the repair or the failure to repair a hot water heater and architect's professional service? It isn't, nor does this physical task arise from Allied Design conducting the inspection named the Health Life Safety Survey and the preparation of a Health Life Safety Survey report as found by the trial court. A wholly reasonable reading of the allegations is that Allied Design undertook the construction and repair work independent and separate from the inspection work. And even if there were some doubt in that regard, the doubt must be resolved in Allied Design's favor at the duty to defend stage. To analogize, the difference between repair and inspect is best explained by an example using a home inspector. Justices, I will make an assumption that all of you purchased a home or some form of real estate, maybe sold it at least once in your life. In the course of the purchase or sale, you may have hired a home inspector to identify defects in the property. Like Allied Design, home inspectors inspect, but do not repair. This is why the trial court is wrong because a duty to repair is not incidental to the duty to conduct a professional inspection. It is well-established in Illinois that the duty to defend is broader than the duty to indemnify. The threshold that an underlying complaint must meet to trigger a duty to defend is low. In evaluating whether a duty to defend exists, the allegations in the underlying complaint must be liberally construed in favor of coverage and any doubts are to be resolved in favor of an insurer like Allied Design. In this case- So why was Allied charged with doing this survey? Justice Connick, the charge was that Allied was engaged to conduct this survey and- Okay, they were hired to do so. That's correct. Were they hired to do any repair work? No. Justice Connick, and I say that from this perspective, if this court looks at the Illinois Administrative Code, specifically 23 Illinois Administrative Code 180.310 as cited in the Appelese brief, there is plenty of language there about inspecting, but not a single word about remedying or repairing. So that's my argument, Justice Connick. Clearly, when you get hired to do an inspection as mandated here by statute or the Illinois Administrative Code, there's a plethora of evidence to show that it involves inspection, but not a scintilla of evidence to show that it involves repair. So if you're hired to do a survey and that is a professional service, during the course of that professional service, if you were supposed to find things that need to be repaired and didn't tell the school district about those repairs or made no effort to repair them, it suddenly becomes negligence outside the scope of professional services. Well, the complaint, Justice Connick, is this, and that Ally Design did not repair. But they weren't engaged to repair. They were engaged to inspect. That is a statutory mandate. The statutory mandate is to inspect. Now, the inspection report is not part of the record here. But if they inspected negligently, that's covered by the policy as your claim. No, Justice Steigman. If the inspection was negligently conducted, that's, in other words, and I'm going to be very clear, I'm speaking of inspection and not repair in answering your question. If it was a negligent inspection, that would be a professional service, Justice. So the policy wouldn't cover it? Well, the policy of which I'm arguing, the business owner policy, no, that would be a professional service, the inspection part. But the other policy you referred to earlier would cover it, right? Justice Turner, I think not the inspection, but the repair part. And that's a distinction I wish to make. Repairing by an architect is not a professional service. I would have analogized it this way. If all of you had your hot water heaters fail tomorrow and you had no hot water in your home, you wouldn't call an architect to repair your hot water heater. You'd call a plumber or some other form of repair person, but it wouldn't be an architect. May I continue, Justice? Yes, go ahead. You have a minute remaining. One minute, thank you very much. Here, the trial court's proper inquiry should have been to focus on whether the facts pled and the underlying complaint, if true, would potentially, again, potentially bring claims within coverage. That did not occur. That is where the trial court failed. Justice, thank you for your time. My argument is concluded. Whatever time I have left, I reserve for rebuttal. Okay, you'll have another opportunity to address this in rebuttal for five minutes, counsel. Thank you, Mr. Kenyon. You're welcome. On behalf of the appellee, you may argue. Thank you, Your Honor. Good morning, Your Honors. May it please the court, counsel, Robert Chemmers, for the defendant appellee, Pagan Insurance Company. It is interesting that we have, on this panel, Justice Nett, who was the author of the State Street Bank decision from 1991. Yeah, but was he right? And we have Justice Steigman, who is the author of ISBA Mutual v. Leighton, which is one of the latest decisions from this court in connection with how an exclusion in a policy applies to a claim. That being said, Justice Steigman, you asked about State Street Bank. Back in 91, a panel of this court held that the claims were not in any way related to the ownership or occupancy of the office building. Instead, they were in connection with the exercise of business judgment as a banker. The Pagan policies here clearly are no different than what was at issue in State Street Bank. The business owner's policy, which is Exhibit A, to the answer and counterclaim, and the page I'm looking at is the scheduled premises, 405 1⁄2 South 6th Street, Springfield, is in Common Law Record Volume 1, page 86. The business description is offices. The fact that they are architects is irrelevant because the Pagan did not intend to insure architects or architectural services. It provided a business owner's policy, which is the premises occupancy-oriented policy. Mr. Chambers, let me ask you a question. And it's based upon an answer Mr. Kenyon gave, which I thought was very interesting. And that is, the insurance company can write the policy any way it wishes. And it is your contention that as in State Street Bank, this is an office building policy. And you've described the premises, I guess, at South 6th Street or wherever it is in Springfield, that there's an office in which the plaintiff, Allied Design Consultants is based. And your contention is, as in that case, it's an office insurance policy. It's intended to cover losses arising out of building ownership or occupancy. So I asked Mr. Kenyon, how would he write this to make it more clear? And he said, how about saying it's intended to cover injuries arising out of building ownership or occupancy limited to that building? Strikes me as that's a pretty good answer. And if I'm peaking insurance and I want this limited to injuries or claims of negligence arising out of the building, how about putting that language in so we're not dealing with this kind of issue? If you're insuring only incidents occurring in the building, why don't you say so? Well, they did. And they said so by virtue of the fact, the insuring agreement of that policy would extend to bodily injury or property damage caused by an occurrence. An occurrence is an accident. The policy then specifically excludes professional services and it describes professional services in a litany of sub paragraphs, including repairing or approving or failing to prepare or approve surveys, designs and specifications or supervisory inspection services. It doesn't specifically say architecture. Now the umbrella policy specifically says architectural services. Bear in mind the plaintiff here, the insured says in its reply brief at page two footnote one, there's no material difference between the two exclusions. Either they both apply or neither one applies. We don't disagree with that. What Pekin told its insured and all the world who reads the policy, we cover bodily injury caused by an occurrence, which is an accident. However, we do not cover bodily injury arising out of the rendering or failure to render professional services. They don't define professional service other than describing certain types, such as approving or failing to approve surveys, designs or specifications or supervisory and inspection services. Let's keep in mind the insured had professional liability insurance. It said so in its amended complaint, paragraph 64. They allege the reason they sued Pekin is because the Pekin policy, if it applies, has an unlimited duty to defend, whereas the professional liability policy, not named by insurer, has an eroding limit. Every dollar spent is a dollar off the limit. So defense costs reduce the limits, including indemnity. That being said, we'll point out to the court that in the motion to dismiss, Pekin filed, which is found at C-750-752, volume one of the common law record. We move to dismiss for various reasons, including the failure to join our ally insurance company, the professional liability carrier, taking the position that allied nowhere alleges it's paid anything for defense. It alleges in fact, it's been defended, but it doesn't like the fact that the defense costs incurred by the professional liability insurer are reducing limits. So that would also answer Justice Turner's question in connection with professional liability insurance. We have a situation where an architect who allegedly, well, the architect, William Van Dusen, an employee of Allied Design, is the entity which constructed and designed the mechanical systems in the building addition at the school in question. So the architect is present at the school building addition mechanical room, looking at the hot water heater, the hot water boilers, the venting and the other appurtenances in that room, which according to Ferguson, one of 23 plaintiffs were constructed and designed by Allied Design. This is not just a person walking around looking at mechanical systems in the boiler room. This is the person engaged by the company that was hired by the school district to design the very systems that he's inspecting. None of us could do that inspection. It must be done by either a licensed engineer or a licensed architect. Mr. Van Dusen was present to conduct the inspection under the school code, under the administrative code, pursuant to contract and pursuant to common law, all of which involve his role as an architect. He can't separate the fact that he is a licensed architect engaged to conduct an inspection and prepare a report that only a licensed architect can conduct and then report. What was done or not done that day in November of 2005, which allegedly led to a carbon monoxide leak nine years later in September of 2014, is the very essence of professional service. It's a service only performed by an architect. We suggest to the court that what we're dealing with is activity. It is not ordinary activity. It's achievable by those. It is not achievable by anyone lacking the relevant professional training, skill, expertise, license and knowledge, such as a professional architect as William Van Dusen. The fact that the insured Allied Design points to the common law duty is nothing more than an attempt to reframe the allegations found in the exemplar complaint of Ferguson, which is relatively identical to the other 22 complaints against Allied Design. It's not relevant. The issue is whether the alleged injuries arose out of the performance of professional services. And according to Ferguson, they unmistakably did. There is an expansive reading or interpretation of the term professional services, and the test was laid out in State Street Bank. The claim must arise or involve a profession. Unmistakably does here. It's architecture. The claim must arise out of acts in the course of practicing that profession, rather than an act that is merely incidental to the profession. That occurred here. An act performed for a client or customer and not for the benefit of the architect himself. Clearly that did here. The specialized knowledge, skill, labor, education, training and professional license were all brought to bear by Mr. Van Dusen on behalf of Allied Design for the school district when the inspection was performed. Now, if we look at the allegations, I think it's paragraph 38 or 39 of count four of the Ferguson complaint, which is exhibit A to the amended complaint. There's a catch-all allegation in subparagraph F, otherwise negligently and carelessly failed to provide proper, adequate and safe professional services in its practice of architecture. That's the that's the sum of all of the allegations. The allegations with respect to failing to inform or warn others of the unsafe and dangerous condition or failing to properly and adequately repair or remedy unsafe conditions within the mechanical systems. You must keep in mind paragraph 20 of the underlying complaint by Ferguson alleges that it was Allied Design that constructed that the building addition was constructed and contained certain mechanical systems designed and or constructed by Allied Design so that Mr. Van Dusen, the architect employed by Allied Design conducting the inspection pursuant to a contract with the school district was looking at the system, the hot water heater, the boiler, the venting and the other devices in that room which were designed and or constructed by Allied Design. That is not something that a lay person can do. This is not a house inspection. This is not somebody looking around saying fix the chip on the counter or fix the running toilet or patch a hole in a wall. This is an inspection that is statutorily mandated for a school building every 10 years to be performed only by an engineer or an architect. Here it was performed by an architect. Everything he did, he did in his role as an architect. It's not separable. The trial court, and I commend the trial judge, your honors may do so as well, wrote a lengthy memorandum opinion in deciding the cross motions for summary judgment. In fact, your honors, when you first got this case, may have wondered how long the trial was, noting that there was more than a 3,000 page record. It's cross motions for summary judgment on what is otherwise a mundane insurance coverage case. Duty to defend, not duty to indemnify or any other issue, duty to defend. And the argument that an architect hired to do something only an architect can do is somehow performing non-architectural service when performing the inspection and preparing the report that only an architect can accomplish. This is not a home inspector. It's not a building inspector sent there. The statute, both the school code and the Illinois Administrative Code don't suggest or speak to an investigation, an inspection by a building inspector. It does talk about the fire marshal doing an annual inspection. However, the decennial or 10 year health life survey must be performed by a licensed architect or engineer. The policy that Pekin issued, both primary and umbrella, are no different, in essence, than the policy referenced in the State Street Bank case. It's a business policy, not ensuring what the business does, but ensuring the premises where the business is located. An architectural error or omission is not covered by Pekin Insurance Company. It would be covered by the professional liability carrier who is not before this court. We submit to the court that there is no question of fact, there is no contention that I recall anywhere in either brief filed by the insured that either exclusion is ambiguous. The argument instead is somehow because the tort plaintiff alleged a common law duty that is no longer an a business activity conducted by the insured that involves what State Street Bank required, specialized knowledge, labor or skill, and is predominantly mental or intellectual, as opposed to physical or manual in nature. I would point out, we called State Street Bank the seminal decision in this area in Illinois, because every subsequent case that we either relied on or distinguished from the plaintiff's argument looked to guidance from State Street Bank, including Pekin Insurance versus L.J. Shaw, which was decided, I argued that in 96 or 97, and it's the identical BOP exclusion to the one here, National Fire versus Kilfoy. That's a case where they held the professional exclusion applied to a hiring decision made by a business in connection with whether it would hire a certain person as a physician to perform medical services. So the hiring decision of a professional was a professional service. The RLI case, that is a rule 21, that's a rule 23 order, I recall, but it's after the statutory deadline where it's persuasive, but not precedential, involves a situation where professional service in connection with the construction of a road or highway is performed, but the removal of a sign or the failure to post a flagman was determined by that panel not to be a professional service. Anyone involved in construction would recognize that it's dangerous at a highway construction site not to have a flagman or not to have a warning posted. Unlike what was performed by Mr. Van Dusen in November of 2005 at the school building. For all of these reasons, your honors, on behalf of Pekin Insurance Company, we respectfully ask the court to affirm the judgment entered below. And I'd be happy to address any questions your honors might have. I have one more question. Yes, sir. Months ago, you seem to say, intimate if not say, that Pekin's insurance policy that's at issue here covered only Allied's place of business on MacArthur in Springfield. Did I hear that right? No, what I said was it covers bodily injury or property damage caused by an occurrence, which is an accident that is not otherwise excluded. And there is an exclusion for what that business does as architects. It would cover general negligence that causes property damage or bodily injury if it arises out of the premises or business of the insured. The business operation. It's a business owner's policy. It's not a commercial general liability policy. So it's limited, as I pointed out. There's nothing in the policy that you could look to, Justice Turner, that would say we don't cover a non-premises related claim. I'm just trying to figure out what kind of insurance policy did they buy then. General negligence policy doesn't seem like it does not apply to professional liability claims. But what does it apply to? It covers the architect's office, but doesn't cover the architect as an architect. That's what the RLI policy does. And the architect's office was on MacArthur and Springfield. Well, if that's 400 South 6th Street, yes. I don't know Springfield that well. I know your building and I know the Supreme Court. So you're doing well. Thank you, Judge. Mr. Kenyon, any rebuttal, sir? Yes, Justice Zeigman. Thank you. Regarding the distinction between the office locations, I live in that area, Justice Turner. I walked my dogs past that office just the day before yesterday. So I know where it's located because I see the sign, as do my dogs. Let me address Mr. Schemer's positions where he says that, you know, the acts of an architect in this instance are not separable. Well, yes, they are. They are very, very much so. And in my brief, I pointed out that the same allegations or very similar allegations are made of negligence against the North Max School District. And it also failed to repair these mechanical systems. Now, a school district, of course, can provide professional services in terms of educating students. However, you know, repairing a hot water boiler or hot water heater is no different than cleaning the gym or repairing or mowing the grass on the football field. These are not professional services. And to repair a hot water heater actually requires probably the taking out of wrenches and screwdrivers, which again are manual in nature and not intellectual in nature. Furthermore, Mr. Schemer's points out in the complaint, there are paragraphs A through F and says that they all apply. However, I would note and would ask his court to make note that between paragraphs E and F of the complaint, at least regarding count four, there is the and or. It's not clear in terms of whether the plaintiff is saying, is alleging, rather, that every one of those allegations in A and F, that, you know, Allied Design committed or did only commit one as in the disjunctive or, and one of those would be the failure to repair. And if there's ambiguity here, then, of course, this court has to decide in favor of the appellee, the appellant, excuse me, which is Allied Design. Finally, are those, as I go back to my earlier statement, the separability of what an architect does. Mr. Schemer's argument does not comport with the Bonney Realty decision, where in that case, this appellate court said that if there are just ordinary negligence claims in a complaint as there are here, then a professional service exclusion is not implicated. Moreover, though, I want to direct this court to the Thomas RLI versus Thomas Engineering case. That is, you know, persuasive as Mr. Schemer's is. We agree with him on that point. However, in that particular instance, the background facts are that Thomas Engineering was engaged to provide construction services and engineering services for some road construction on Interstate 90. That's why it was on location. The same reason being Allied Design was contracted to provide inspection services at a school and also construction services. In the RLI case, the allegations were that Thomas Engineering failed to post flagmen, to show lane changes, remove signs, to warn drivers of lane changes. And as a result, there was a horrible fatality. What the first district of this appellate court decided was when RLI said, no, those activities, those involve professional services and Thomas Engineering said, no, they do not. The appellate court agreed with Thomas Engineering and said, you know, moving flags, having flagmen, moving road signs, that's physical activity. That's mental or intellectual in nature. That's easily, you know, the analogy is easy to make to this case here. We're repairing a hot water heater, repairing a hot water boiler, repairing, you know, duct services involves taking out tools, physical activity, and conducting repair. Those are not mental or intellectual in nature. Those are, you know, and only the common and ordinary do care standards apply. Thank you for this court debate. I will, I'm now ready to address any questions. Thank you, counsel. I don't see any, and I want to thank both you and Mr. Chemers. This is complicated stuff and I thought both of you did a very nice job in presenting more arguments to this court. So thank you. We'll take this matter under advisement and stand in recess.